Case: 1:21-mj-00297
Assigned To : Harvey, G. Michael
Assign. Date : 03/10/2021
Description: Complaint w/ Arrest Warrant

**STATEMENT OF FACTS**

Your affiant, William Matos-Ginorio, is a Special Agent with the Department of Homeland Security ("DHS"), Federal Protective Service ("FPS") assigned to the Federal Bureau of Investigation ("FBI"), DC Violent Crimes Task Force ("DCVCTF") as a Task Force Officer ("TFO"). In my duties as a special agent, I am responsible for investigating violent crimes to include but not limited to kidnappings, bank robberies, assaults, armed carjackings, and threats to government officials. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 6, 2021, Metropolitan Police Department ("MPD") Officer M.F. responded to a radio call for assistance at the U.S. Capitol. Officer M.F. was in full MPD uniform and equipped with a body-worn camera. Officer M.F. responded to the west front of the U.S. Capitol and became involved with other officers in the effort to push back rioters from the doorway to the U.S. Capitol at the lower west terrace. While Officer M.F. was defending the doorway, a rioter pulled Officer M.F. into the crowd, where members of the crowd beat, tased, and robbed Officer M.F. of his MPD badge (#3603), police radio, and MPD-issued 17-round magazine, while also trying to forcibly remove his service weapon from its fixed holster. The radio was securely attached to Officer M.F.'s tactical vest, and the badge was pinned to the vest. As a rioter attempted to get Officer M.F.'s gun, Officer M.F. heard him yell words to the effect that he was going to take Officer M.F.'s gun and kill him. Following the assault, Officer M.F. lost consciousness and was hospitalized for his injuries, including a likely concussion and injuries from the taser. Officer M.F. was admitted to the hospital for monitoring of his cardiac activity.

Officer M.F.'s tactical vest contained a hole where the badge had been forcibly ripped out. Figures 1 through 3 below depict the condition of Officer M.F.'s tactical vest after the assault. Figure 2 shows the compartment where Officer M.F.'s police radio was securely attached to his vest when it was ripped off. Figure 3 depicts the hole caused by the badge being forcibly ripped off. Figure 4 depicts the back of a new badge that was issued to Fanone since his badge was stolen. The vertical pin used to attach the badge, which was designed the same way in Fanone's stolen badge, matches the tear in the officer's tactical vest.



Figure 1



Figure 2



Figure 3



Figure 4

Officer M.F.'s body-worn camera depicts the attack, including footage of an individual reaching toward Officer M.F. and pulling out objects consistent with an MPD badge and police radio. Figures 5 through 8 are screenshots from Officer M.F.'s body-worn camera depicting the robbery.



Figure 5



Figure 6

5


Figure 7


Figure 8

On January 21, 2021, FBI agents in Buffalo, NY, interviewed WITNESS 1 regarding potential information related to the events at the U.S. Capitol on January 6, 2021. WITNESS 1 reported that Thomas Sibick ("SIBICK") posted a video of the riot to his Instagram account. WITNESS 1 provided the video, which shows footage of SIBICK using his cell phone to record himself on the inauguration ceremony stage of the lower west terrace where he screams, "Just got tear-gassed, but we're going, baby, we're going! We're pushing forward now!" Figures 9 and 10 are still images from the video.



Figure 9



Figure 10

On January 27, 2021, agents interviewed WITNESS 2, who is familiar with SIBICK. WITNESS 2 provided a photograph that WITNESS 2 reported receiving from another individual who saw the photo on SIBICK's Facebook account. The photograph depicts SIBICK with a U.S. Capitol Police Shield. SIBICK is wearing a black and gray hat, black sweater with a gray "The North Face" vest, and blue jeans. Figure 11 shows the photo.



Figure 11

Review of surveillance footage from January 6, 2021, showed that around 3:08 p.m., an individual who appears to be SIBICK moved to the mouth of the tunnel on the lower west terrace that led inside the Capitol building. At that time, a group of U.S. Capitol Police ("USCP") and MPD officers had formed a police line at that entrance to the Capitol to prevent the mob from entering the building through that entrance. Figure 12 shows SIBICK at the mouth of the tunnel with other individuals in the mob; he is facing the direction of the police line, which was located immediately in front of the doors to the Capitol building at that time. SIBICK then entered inside the tunnel, as shown in Figure 13. He moved forward to the police line until he was no longer visible on camera. Around 3:11 p.m., SIBICK turned around and moved outside the tunnel, as shown in Figure 14.



Figure 12



Figure 13



Figure 14

An open source video posted on YouTube shows SIBICK exiting the tunnel, as shown in Figures 15.[1] SIBICK can be heard saying, "Let me out. Let me out." An individual in front of him assists SIBICK in getting out such that SIBICK is no longer visible on camera. At that point, a voice that likely belongs to the man who helped SIBICK tells SIBICK "Thank you for your service," and then asks where he is from. A voice that seems to be SIBICK's can be heard saying, "Buffalo," and then states, "Let's go. Let me just get refreshed."



Figure 15

---

[1] The video can be found at *https://www.youtube.com/watch?v=0zyjCvDN4Ig&feature=youtu.be*. SIBICK is visible coming out of the tunnel from minute marker 1:14:32 to 1:14:42.

Agents conducted an initial interview of SIBICK on January 27, 2021. SIBICK acknowledge being in Washington, D.C. at the U.S. Capitol on January 6, 2021. SIBICK stated that while he was at the Capitol, he saw a D.C. Metro Police Officer being pulled down the steps and hit with what SIBICK described as a "flagpole." SIBICK also reported seeing at least two other individuals beating the D.C. Metro Police Officer and attempting to get his gun, but were unable to do so because of the "plastic piece on top of the holster." SIBICK heard someone say, "Get his gun and kill him." SIBICK stated that he attempted to reach the officer to pull him away but was unable to get to him and at that point he feared for his life and that of the officer. SIBICK further stated that due to the violence, he decided to leave. When shown the photograph of SIBICK holding the riot shield, SIBICK said that the shield had been passed through the crowd and SIBICK asked a man next to him to take his picture with it. SIBICK further explained that a man in a tactical vest asked SIBICK if he was going to "use" the shield, to which SIBICK replied, "No."

On February 2, 2021, SIBICK contacted one of the agents who had previously interviewed him and stated that he had been thinking about the individuals that assaulted the police officer and that he was going to email the agent with more information. When asked if he had anything different to add to his previous interview, SIBICK replied, "No." When asked if the details he described in his prior interview were accurate and honest, SIBICK replied, "Yes." The agent asked SIBICK if he had participated or was involved in any way in the assault of the D.C. police officer, and SIBICK replied, "No" and reiterated that he had tried to pull the officer away but was unsuccessful.

On February 23, 2021, the agents re-interviewed SIBICK after law enforcement observed an individual consistent with SIBICK's appearance on Officer M.F.'s body-worn camera. The agents showed SIBICK still shots from Officer M.F.'s body-worn camera. SIBICK admitted to grabbing the officer's badge and radio. SIBICK stated that he had reached in to try to help the officer, and that he remembered the badge coming off as he reached for him. SIBICK said that he pressed the "emergency orange button" once he had possession of the radio to get help for the officer.[2] SIBICK also stated that he dropped the badge and radio and left. When asked if he saw anyone pick up the radio and badge, SIBICK said that he carried the radio and badge with him when he left and dropped them in a trash can on Constitution Avenue. SIBICK stated that he thought about giving the items to an officer but was afraid of being arrested. Later in the interview, SIBICK stated that he needed to "recant" his statement and that he actually brought the items to his hotel room and then back to his home in Buffalo, NY. SIBICK stated that the day after he returned to Buffalo, he was planning to turn the items in to the FBI. However, he was afraid of being arrested and instead threw them in a dumpster on North Street in Buffalo. SIBICK later clarified that it was a dumpster located on the back alleyway of the Lenox Hotel at 140 North Street.

On February 25, 2021, an agent sent SIBICK a ruse email stating that the security cameras at the Lenox Hotel were going to be checked to confirm SIBICK's statement that he disposed of the badge and radio in the dumpster. On February 26, 2021, SIBICK called the agent stating that

---

[2] Agents attempted to check records to verify whether the emergency button on Officer M.F.'s radio had been activated around the time of the robbery. However, when Officer M.F.'s radio was reported stolen, it was deactivated, which erased records of the radio's use, including any records of the emergency button being activated.

he was distraught and "wanted to do the right thing." SIBICK stated that he did not dispose of the badge in the dumpster behind the Lenox Hotel. Rather, he had buried the badge in his backyard. SIBICK stated that he purchased a metal detector to find the badge, which he then dug up, and that he wanted to return it. SIBICK stated that he had actually thrown away the radio, however.[3] Later that night, SIBICK met the agent and gave him a bag containing mud and Officer M.F.'s badge (#3603). A photo of the badge is depicted in Figure 16.



Figure 16

Based on the foregoing, your affiant submits that there is probable cause to believe that THOMAS SIBICK violated 18 U.S.C. § 1752(a)(1) and (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

---

[3] Agents were unable to find any security cameras to confirm or refute SIBICK's claim.

Your affiant submits there is also probable cause to believe that THOMAS SIBICK violated 40 U.S.C. §§ 5104(e)(2)(D) and (F), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that THOMAS SIBICK violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant further submits there is probable cause to believe that THOMAS SIBICK violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties, while using a deadly or dangerous weapon. Persons designated within section 1114 of Title 18 include any person assisting an officer or employee of the United States in the performance of their official duties and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

Finally, your affiant submits there is probable cause to believe that THOMAS SIBICK violated 18 U.S.C. § 2111, which makes it a crime for a person to, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, take or attempt to take from the person or presence of another anything of value.

                                                                       _____
                                                                       TFO William Matos-Ginorio
                                                                       Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 10th day of March 2021.

                                                                      _____
                                                                       G. MICHAEL HARVEY
                                                                       U.S. MAGISTRATE JUDGE