UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,

v.

THOMAS F. SIBICK,

                 Defendant.

_____

         **Case No. 1:21-mj-00297**
    **CHIEF JUDGE BERYL A. HOWELL**

     **DEFENDANT'S RESPONSE TO**
     **GOVERNMENT'S MOTION FOR**
      **APPEAL OF RELEASE ORDER**

      Alexander Anzalone and Timothy P. Murphy, Assistant Federal Public Defenders for the Western District of New York, declare the following to be true and accurate to the best of our knowledge:

      Our office represented defendant Thomas F. Sibick in the above-captioned matter on March 12, 2021 in the Western District of New York during his Rule 5 and detention proceedings. Mr. Sibick was not arrested but, rather, self-surrendered at the courthouse as directed. The Court released Mr. Sibick from custody, under certain conditions, including the most restrictive condition available (home incarceration) and under the third-party custody of his parents.  The Court further denied the government's request for a stay of its release order. That same date, the government filed in this Court a Motion for Emergency Appeal of Release Order. Doc. 7. This pleading is the defendant's response to that motion.

      As set out below, despite knowing the whereabouts of Mr. Sibick for at least a month and a half, actively engaging with Mr. Sibick on multiple occasions since January 27th, and having what the government characterizes as the most damaging evidence against him for several weeks, it wasn't until March 12th that the government espoused the belief that the defendant needed to be detained.  A likely reason for the government's delayed approach in this regard is

that, unlike other Capitol riot defendants who have recently appeared before this Court, Mr.

Sibick is not alleged to have been a leader or organizer of the January 6th events, nor is he

alleged to be a member of the Proud Boys or Oath Keepers. The government's approach to his

investigation prior to his appearance in the Western District of New York undercuts its position

that Mr. Sibick's pretrial release presents a continuing danger to the community.

I.     <u>**Procedural History and Background**</u>

On March 12, 2021, Mr. Sibick was charged with various offenses in the Western District

of New York based on an arrest warrant issued by District of Columbia Magistrate Judge G.

Michael Harvey. Doc. 6. He walked into the Robert Jackson courthouse in Buffalo, as scheduled

and out of custody, at 9:15 am that Friday morning, accompanied by his mother, Carol Sibick.

The five charges set out in the criminal complaint, Doc. 1, stem from the events of

January 6, 2021, where the Capitol was stormed by hundreds of protesters and supporters of

then-President Trump. The complaint alleged violations of 18 U.S.C. § 231(a)(3), Obstruction of

Law Enforcement During Civil Disorder; 18 U.S.C. § 111(a)(1), Assaulting, Resisting, or

Impeding Certain Officers; 18 U.S.C. § 1752(a)(1), Knowingly Entering or Remaining in any

Restricted Building or Grounds Without Lawful Authority; 40 U.S.C. § 5104(e)(2), Violent

Entry and Disorderly Conduct on Capitol Grounds; and 18 U.S.C. § 2111, Taking from a Person

Anything of Value by Force and Violence or by Intimidation Within Special Maritime and

Territorial Jurisdiction.

On March 12th, an initial appearance was held before Western District of New York

Magistrate Judge H. Kenneth Schroeder, Jr.  The government moved for detention pursuant to 18

U.S.C. § 3142(f)(1)(A), as it argued 18 U.S.C. § 2111 was a crime of violence. Following a detention hearing, Mr. Sibick was released on the condition of home incarceration to the third party custody of his parents and ordered to reside during the pendency of this case at their residence in Amherst, New York.

During the detention hearing, the government presented video evidence that during the January 6th riot, Mr. Sibick had taken the badge and radio from a Capitol Police Officer. Judge Schroeder learned during the hearing that Mr. Sibick had repeated contact with law enforcement investigating this case by either phone, in person or e-mail on at least five separate occasions, on January 27th, as well as February 2nd, 23rd, 25th and 26th of 2021. *See*, Doc. 7, at 14-16. Mr. Sibick acknowledged being present during the January 6th event. Images captured on social media further confirmed this. Video coverage of the event purportedly showed the defendant taking an officer's badge and radio during the riot.[1]

Following a February 25th e-mail from law enforcement, the government alleges that Mr. Sibick called law enforcement the next day, describing how the radio and badge were disposed of. The badge was retrieved by Mr. Sibick and turned over to an agent that evening.  Doc. 7, at 6-7.

The judge further learned the government has known of Mr. Sibick's whereabouts for **nearly 2 months** and concluded its investigation of the defendant approximately **2 weeks before**

---

[1]  Mr. Sibick informed law enforcement that during the events, he pressed the orange emergency button on the officer's radio in order to seek help for the officer.  The government, at Doc. 7, at 15 (fn2), noted that the record of transactions involving the radio had been erased upon the radio being reported stolen. The defense then received further information from the government indicating that the emergency mechanism had been triggered twice, including once after the body camera footage appears to show Mr. Sibick taking custody of the radio.

**the detention hearing**.  Indeed, the government had been in possession of an officer's body camera footage it believes is strong evidence of the defendant's guilt for at least **2 weeks** preceding the first appearance in court, likely longer given the nature of its investigation.  It is reasonable to assume it had been evaluated and analyzed prior to February 23rd.  For the two weeks following February 23rd, the government took no steps to arrest Mr. Sibick, apparently not believing he was such a danger to the community that he must be immediately detained.  Moreover, the defendant was permitted to **self-surrender** to federal authorities on the morning of March 12th.

After hearing from the parties, Judge Schroeder imposed specific conditions on Mr. Sibick's release that would reasonably assure his appearance in court and the safety of the community, consistent with 18 U.S.C. § 3142. Those conditions required Mr. Sibick being released into the third party custody of his parents, who are responsible for making sure the defendant gets to the District of Columbia for future court proceedings. Mr. Sibick is to be placed on home incarceration at his parents' residence in the Town of Amherst, County of Erie, in New York.

In its motion for an "emergency" appeal, the government argues that 18 U.S.C. § 2111 is a crime of violence, making the defendant eligible for detention under 18 U.S.C. § 3142(f)(1)(A). Doc. 7, at 17. The government's position is essentially that Mr. Sibick's purported actions on January 6th and taking of the officer's badge and radio make the defendant a danger to the community. Doc. 7, at 17, 19.

The government also states that it "[o]rally sought a stay of the Order pending this Motion for Review. The magistrate judge denied that request, and <u>despite our best efforts</u>, the defendant was released while we were preparing this motion." Doc. 7, at 17-18 (emphasis

added). The government attempts here to paint the picture that Mr. Sibick is such a danger that the prosecution did everything it could to keep him in custody - - but the defendant *(pursuant to the Magistrate's order of course)* somehow snuck out. Frankly, nothing could be further from the truth.  In fact, as noted above, the government knew of Mr. Sibick's whereabouts for almost two months before it decided to press these charges. Its investigation ended weeks ago. The defendant voluntarily self-surrendered. The Government had multiple opportunities to take steps to detain Mr. Sibick since it first learned of his involvement on January 27th, yet has not taken this position until three days ago.  No new material facts have arisen since Judge Schroeder issued his release order, and, in fact, Mr. Sibick has been fully compliant with the conditions of his release and will appear, once again voluntarily, for court on Tuesday, March 16th.

## II.    **The Bail Reform Act**

As the Supreme Court has recognized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States. v. Salerno*, 481 U.S. 739, 755 (1987).  Excessive bail is prohibited.  U.S. Const., amend. VIII. Consistent with this principle and the presumption of innocence,[2] the Bail Reform Act ("BRA") "generally favors" that a defendant be granted pretrial release. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  "In applying the [§ 3142] factors to any particular case… it is only a "limited group of offenders" who should be denied bail pending trial."  *United States v. Shakur*, 817, F.2d

---

[2] *See also*, *Betterman v. Montana*, 136 S. Ct. 1609, 1614 (2016) (recognizing the constitutional speedy trial right's implementation of the presumption of innocence by "prevent[ing] undue and oppressive incarceration prior to trial" (internal citations omitted)).

189, 195 (2d Cir. 1987) (citations omitted).  Pretrial detainment may not be used as punishment. *Bell v. Wolfish*, 441 U.S. 520, 536-537 (1979); *Salerno*, 481 U.S. at 749. Indeed, the BRA requires that the Court impose the "least restrictive" means of ensuring the appearance of the person and safety to the community.  18 U.S.C. § 3142(c)(1)(B).

In passing the BRA, Congress sought to detain fewer people prior to trial, not more. While fully aware that sentencing exposure is overwhelming for most individuals accused in the federal system, Congress still crafted a law acknowledging that detention is only appropriate for that "small but identifiable group of particularly dangerous defendants." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting S. Rep. No. 98-225, at 6 (1984)). To further this goal of less pretrial detention, Congress restricted the government's ability to even request detention.  Specifically, the BRA provides that the government may request a bail hearing only if certain conditions in § 3142 are present—e.g., the defendant is charged with a crime of violence, faces a life sentence, death, or a drug offense with a 10-year or greater penalty, or poses a "serious risk" that he will "flee" or "obstruct justice." *See,* 18 U.S.C. § 3142(f)(1), (2). As the D.C. Circuit has recognized:

> Detention until trial is relatively difficult to impose. First, a judicial officer must find one of six circumstances triggering a detention hearing. See 18 U.S.C. § 3142(f). Absent one of these circumstances, detention is not an option. *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). Second, assuming a hearing is appropriate, the judicial officer must consider several enumerated factors to determine whether conditions short of detention will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The judicial officer may order detention if these factors weigh against release.

*Singleton*, 182 F.3d at 9.

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). Under the BRA, pretrial release must be granted unless the accused is a serious flight risk or a danger to the community, and the Court determines release will not reasonably assure the appearance of the person as required, or will endanger the safety of any other person or the community.

In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see*, *United States v. Chrestman*, No. 21-mj-218, __ F. Supp. 3d __ , 2021 U.S. Dist. Lexis 36117, at *13-14 (D.D.C. Feb. 26, 2021) (Howell, B., C.J.).  The weight of the evidence against the defendant is the least among the detention factors a District Court should consider, because it is counterbalanced by the presumption of innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). This Court reviews a magistrate's judge's release or detention order *de novo*. *Chrestman*, 2021 U.S. Dist. Lexis 36117, at *20.

### a.   Mr. Sibick is Not a Serious Flight Risk

Risk of flight under the BRA must be established by a preponderance of the evidence. *United States v. Simkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). The government did not argue that Mr. Sibick is a flight risk before Magistrate Judge Schroeder, nor could it given the investigative history of this case set forth above.

Mr. Sibick is 35 years old and was living with his girlfriend in a residence he owns in Amherst, New York, at the time of his arrest. Prior to this case, he was employed in a nursing home and expects to continue working in that important industry. There was no indication at the detention hearing that Mr. Sibick suffers from any substance abuse or addiction. He is now under a court order to reside during the pendency of this case with his parents in their Amherst home, under the strictest condition of home incarceration; the Court is empowered to impose 24-hour GPS location monitoring so that authorities would be notified immediately should Mr. Sibick attempt to leave his home. During the detention proceedings, his father assured Judge Schroeder he would make sure Mr. Sibick attended all court appearances in the District of Columbia. Indeed, Mr. Sibick has always appeared in court when required to in previous cases.  Critically, Mr. Sibick turned himself in on his own accord on March 12th.

### b.   Mr. Sibick does not pose a continuous danger to the community.

The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *Simkins*, 826 F.2d at 96.  This requires a "high degree of certainty." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The

government must prove that no condition or combination of conditions will reasonably assure the safety of another person, or the community. 18 U.S.C. § 3142(e).

    The criminal complaint and supporting affidavit allege Mr. Sibick's participation in a mass riot at the Capitol. As averred above, however, the government knew where Mr. Sibick was for several weeks after having collected, according to the government, the most incriminating evidence against him. If Mr. Sibick was such an ongoing danger to the community, why did the government allow him to remain free for so long and then permit him to surrender himself to authorities?  The government's response in this case stands in stark contrast to its approach in other cases in which it took immediate steps to detain and incapacitate individuals who it believed were leaders, organizers, or active planners of the riot; Mr. Sibick played no such role, so the government took its time investigating him, understanding that he was no longer a danger to the community.

    As your Honor observed last month, even when dealing with the enormity of the January 6th storming of the Capitol, each detention case must be evaluated on its own circumstances. *Chrestman*, 2021 U.S. Dist. Lexis 36117, at *20; *see also*, *e.g.*, *United States v. Griffin*, No. 1:21-cr-00092, Order Setting Conditions of Release, dated Feb. 5, 2021, Doc. 13 (D.D.C. 2021) (where your Honor ordered the pretrial release of a Capitol riot defendant, a leader in a New Mexico organization, "Cowboys for Trump," who after January 6th enthusiastically expressed on social media an intention to return to the Capitol, warning, "there's gonna be blood running out of that building" (see, Doc. 11, at 2)).

    Mr. Sabick presents no continuing threat to the community and should not be detained during this prosecution. Unlike the detained defendant in the recent *Chrestman* decision, for instance, there is no evidence that Mr. Sabick planned, coordinated or led the attack on the

Capitol. Nor did Mr. Sibick carry or use a weapon, wear a tactical vest, gas mask or helmet. 2021 U.S. Dist. Lexis 36117, at *22-25, 47. Nor was he a member of a violent organized gang that went to the Capitol in order to cause mayhem. *Id*. Nor did he utilize the residence where his ordered home confinement would be for planning the January 6th Capitol attack. *Id*. at *48-49.

Mr. Sibick was no mastermind or organizer of the events of January 6th. His release pretrial does not present a continuing danger to the community. His alleged actions, if true, are certainly troubling and may even have constituted a danger *that day*. But that's not the standard and he's not permitted under the BRA to be punished prior to trial for those actions. *Bell v. Wolfish*, 441 U.S. 520, 536-537 (1979). The Court has to evaluate him as he stands today, and there's been no indication whatsoever that he will engage in any violence whatsoever. He's a scared man who according to the government's own proffer turned over evidence he had buried in his backyard, hardly a dangerous mastermind. Consistent with the government's approach to Mr. Sibick's detention up until three days ago, Mr. Sibick's pretrial release does not present a continuing danger to the community.

### III.    <u>Conclusion</u>

The defense respectfully requests that the government's motion to reverse the March 12, 2021 order of release be denied.  The order should be continued on the conditions Judge Schroeder found would ensure Mr. Sibick's appearance in court and community safety.

Dated: Buffalo, New York
       March 15, 2021

                          Respectfully submitted,

                          **/s/Alexander Anzalone**
                          Alexander Anzalone

                          **/s/Timothy P. Murphy**
                          Timothy P. Murphy

                          Assistant Federal Public Defenders
                          Federal Public Defender's Office
                          300 Pearl Street, Suite 200
                          Buffalo, New York 14202
                          (716) 551-3341
                          (716) 551-3346 (Fax)
                          alexander_anzilone@fd.org
                          timothy_murphy@fd.org

                          *Counsel for Defendant Thomas F. Sibick*

**TO:**   **Cara Gardner**
        Assistant United States Attorney

        **Tara Ravindra**
        Assistant United States Attorney