UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-291-1 (ABJ) |
| v. : | |
| : | |
| THOMAS F. SIBICK : | |
| : | |
| Defendant. : | |

### RESPONSE TO MINUTE ORDER REGARDING VIDEO EXHIBIT RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's June 21, 2021 and June 23, 2021 Minute Orders, directing the parties to respond to Petitioners' request to access "videos referenced in and depicted in screenshots in the government's Memorandum in Support of Detention" in the above-captioned case. Petitioners represent 16 news organizations, which have moved this Court to disclose the videos pursuant to the procedure outlined by the Chief Judge in Standing Order 21-28 (BAH). In its Memorandum in Support of Detention, the government included screenshots from the following videos:

    1) **Video 1**: an Instagram video created by the defendant,

    2) **Video 2**: an annotated clip from Officer Michael Fanone's body-worn camera,

    3) **Video 3**: an open-source video posted to YouTube,[1]

    4) **Video 4**: Officer Michael Fanone's body-worn camera, and

    5) **Video 5**: surveillance footage for the Lower West Terrace of the United States Capitol.

---

[1] A link to the video was included in the government's Memorandum in Support of Detention: https://www.youtube.com/watch?v=0zyjCvDN4Ig&feature=youtu.be.

1

Videos 1 and 2 were submitted to the Court to review for the defendant's detention hearing. The government provided an open-source link to Video 3 in its Memorandum in Support of Detention. Videos 4 and 5 have never been submitted to the Court, and Video 5 is currently subject to a Protective Order.

The Press Coalition's request should be granted as to Videos 1 and 2, dismissed as moot as to Video 3, and denied on its merits as to Videos 4 and 5.[2] The government does not object to the release of Videos 1 and 2, the two videos submitted to this Court, in accordance with the procedure outlined by the Chief Judge in Standing Order 21-28 (BAH), at 6. Video 3 has already been released via the open-source link referenced above, so release of that video is moot. The government opposes the release of Videos 4 and 5, as the government has never submitted those videos to the Court, the videos have never been the subject of any judicial decision, and thus they are not a "judicial record" to which any public right of access might attach. Furthermore, Video 5 is designated as "Highly Confidential" under the parties' Protective Order in this case (ECF No. 27).

## I.      Background

The relevant background to the Press Coalition's Application for Access to Video Exhibits is as follows. On March 10, 2021, the Honorable G. Michael Harvey issued a warrant for Defendant Thomas F. Sibick's arrest for various crimes that Sibick committed during the January 6, 2021, attack on the U.S. Capitol (ECF No. 1). Law enforcement officers arrested Sibick on March 12, 2021 (ECF No. 6). Sibick was released by the magistrate judge in the Western District

---

[2] The government conferred with defense counsel for Sibick, Stephen Brennwald, on the defense position on the Press Coalition's request. The defense does not object to the release of any of the videos.

of New York, but the government moved for an emergency appeal of the release order (ECF No. 7), which was granted by Chief Judge Beryl A. Howell in a Minute Order issued on March 12, 2021. On March 15, 2021, the government filed a Memorandum in support of Pretrial Detention (ECF No. 8), and on March 16, 2021, the Chief Judge held a hearing on the government's appeal and detained Sibick pending trial (ECF No. 12).

On April 16, 2021, at the government's request and with Sibick's consent (ECF No. 23), the Court entered a Protective Order governing discovery in this case (ECF No. 27). The Protective Order allows the government to designate certain materials provided in discovery as "Sensitive" or "Highly Sensitive," and expressly recognizes that "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" is among the "[e]xamples of materials that the United States may [so] designate" (ECF No. 27 at 1). Among other things, the protective order prevents the dissemination of materials designated as Sensitive or Highly Sensitive "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (*id.* at 2). After the Court entered the protective order, the government provided surveillance footage to Sibick from the U.S. Capitol Police's closed-circuit video system that it designated as Highly Sensitive.

On June 16, 2021, the Press Coalition filed the instant Motion for access to the underlying videos from which "the Government referenced and submitted screenshots . . . to the Court in support of its Memorandum in Support of Detention" (Application for Access to Video Exhibits at 2).

## II. Argument

### A. The Government Does Not Oppose the Release of Videos 1 and 2

The D.C. Circuit has consistently employed the six-factor "Hubbard test"[3] when determining whether the common-law right of access to judicial records requires those records to be made available to the public for copying and inspection. Applied in the general context of video exhibits admitted into evidence in court hearings involving defendants charged with criminal offenses related to the January 6, 2021 breach of the U.S. Capitol, and absent order of the court, that test generally weighs in favor of allowing public access to these exhibits.

The government submitted Videos 1 and 2 to this Court to consider in making the Court's detention determination in this case. Neither party sought a sealing order for the videos upon their submission. Therefore, since those videos were used in this Court's decision on detention, and they are not subject to a sealing order, the government does not object to their disclosure at this time. Furthermore, the government does not oppose the Press Coalition's request in its Notice of Supplemental Authorities that the Court refrain from imposing a restriction pursuant to the Chief Judge's Standing Order as to the "recording copying, downloading, retransmitting or further broadcasting" of Videos 1 and 2 (Standing Order 21-28 (BAH), at 6).

---

[3] The *Hubbard* test balances the following factors: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Leopold v. v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)).

B.   **The Release of Video 3 is Moot**

Video 3 is already publicly available.[4] Thus, the Press Coalition's request as to this video should be dismissed as moot.

C.   **The Press Coalition May Not Seek Disclosure of Videos 4 and 5**

*Hubbard* is not determinative as to Videos 4 and 5, where the materials at issue are not "judicial records." Those videos, from which photographic stills were included as exhibits, were not provided to the Court for review, nor were they played or admitted during the hearing on the defendant's detention. Entering a screenshot as an exhibit does not make the entire video from which the screenshot was taken an exhibit. Thus, the videos requested by the Press Coalition are not "judicial records" to which any right of public access might attach. *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994) ("the media's right of access does not extend to information gathered through discovery that is not part of the public record[.]"); *see also, e.g.*, *United States v. Bundy*, No.: 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. LEXIS 166626, at *9 (D. Nev. Nov. 30, 2016) ("[T]he U.S. Supreme Court has long held that there is no common law or First Amendment public right of access to *discovery* information, let alone any presumption of a right to access. . . . The qualified First Amendment right of access to judicial proceeding and documents simply does not extend to discovery materials."); *In re Special Proceedings*, 291 F. Supp. 2d 44, 48 (D.R.I. 2003) ("the media have a presumptive common-law right of access to judicial records but not to potential evidence possessed by the parties") (citations omitted).

---

[4] https://www.youtube.com/watch?v=0zyjCvDN4Ig&feature=youtu.be

As the D.C. Circuit recently explained, although "third parties may intervene in cases for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order[,]" they "may seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020). However, materials provided in discovery but never submitted to a court are not judicial records. *See, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers."). As the Eleventh Circuit has explained, "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). Thus, because the Press Coalition has no right of access to materials provided by the government in criminal discovery but never submitted to the court, there is no legal basis for its request for unspecified videos to be released to the public in this case.

The *Hubbard* analysis is inapplicable to Videos 4 and 5, where the materials at issue are not "judicial records." Furthermore, Video 5 is subject to a Protective Order that prevents its dissemination "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (ECF No. 27 at 2).

WHEREFORE, the Government asks that the Press Coalition's Application for Access to

Video Exhibits be granted as to Videos 1 and 2, dismissed as moot as to Video 3, and denied as to Videos 4 and 5.

                Respectfully submitted,

                CHANNING D. PHILLIPS
                Acting United States Attorney
                DC Bar No. 415793

By:    /s/ *Cara A. Gardner*
        Cara A. Gardner
        Assistant United States Attorney
        D.C. Bar 1003793
        U.S. Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        202-252-7009
        Cara.Gardner@usdoj.gov

        */s/Tara Ravindra*
        Tara Ravindra
        Assistant United States Attorney
        D.C. Bar No. 1030622
        555 4th Street, N.W.
        Washington, D.C.
        (202) 252-7672
        Tara.Ravindra@usdoj.gov