UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-291-1 (ABJ) |
| : | |
| THOMAS F. SIBICK, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO REOPEN DETENTION HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to the defendant's Motion to Reopen Detention Hearing (ECF No. 66). For reasons stated below, the government submits that the motion should be denied. In support, the government relies on the following factual and legal authority, as well as any that may be offered at a hearing on these motions.

**PROCEDURAL HISTORY**

On March 12, 2021, defendant Thomas F. Sibick was arrested in his home state of New York on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint charging the defendant with Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Assaulting, resisting, or impeding certain officers or employees, in violation of 18 U.S.C. § 111(a)(1), Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1), Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2), and Taking from a Person

1

Anything of Value by Force and Violence or by Intimidation Within Special Maritime and Territorial Jurisdiction, in violation of 18 U.S.C. § 2111.

At his detention hearing in the Western District of New York on March 12, 2021, the government made a motion to detain Sibick without bond pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A), which provides for detention in cases involving a crime of violence. In this case, 18 U.S.C. § 2111 constitutes a crime of violence. At the conclusion of the hearing, after hearing the government's proffer and response by the defense, Magistrate Judge H. Kenneth Schroeder, Jr. released Sibick to home conferment in his parents' home and ordered that the release be effectuated immediately. Magistrate Judge Schroeder denied the government's request for a stay, and Sibick was released within minutes of the Magistrate Judge's ruling.

The government filed an Emergency Appeal of the Release Order on the same day that Sibick was released (ECF No. 7). Chief Judge Beryl A. Howell ordered a remote Motion Hearing on March 16, 2021. The government filed a Memorandum in Support of Pretrial Detention (ECF No. 8), and the defense filed a Response (ECF No. 9). The government also shared two videos with the Court and defense counsel, an Instagram video Sibick posted (included here as Exhibit 1), and a clip from Officer M.F.'s body-worn camera, which was slowed down and annotated (included here as Exhibit 2). After the hearing, Chief Judge Howell reversed Magistrate Judge Schroeder's release order, ordering that Sibick be detained pending trial (ECF No. 12). Sibick appealed Chief Judge Howell's ruling (ECF No. 16). The Court of Appeals affirmed Chief Judge Howell's detention decision on May 21, 2021 (ECF No. 48).

On April 9, 2021, Sibick was indicted by a grand jury with one count of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections

1512(c)(2) and 2; one count of Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3); one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of Title 18, United States Code, Section 111(a)(1); one count of Robbery, in violation of Title 18, United States Code, Section 2111; one count of Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2); one count of Impeding Ingress and Egress in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(3); one count of Engaging in Physical Violence in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(4); and one count of Impeding Passage Through the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(E); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(F) (ECF No. 19).

On September 10, 2021, Sibick filed his Motion to Reopen Detention Hearing (ECF No. 66). The government now responds in opposition.

## LEGAL AUTHORITY

A detention hearing may be reopened at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). However, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United*

*States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). District courts apply a *de novo* standard of review in evaluating a magistrate judge's detention decision. *See*, *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004).

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

## ARGUMENT

The § 3142(g) factors weigh in favor of detention, and the information the defense argues in its motion is not of the kind "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The defense's motion only provides information "not known to the movant at the time of the hearing." This information should not move the needle for this Court in determining whether detention is appropriate. Respectfully, the defendant's request for release should therefore be denied.

I. **The Bail Reform Act factors remain in favor of detention.**

   A. <u>Nature and Circumstances of the Offense</u>

The first factor, the nature and circumstances of the offense charged, weighs in favor of continued detention. On January 6, 2021, Sibick joined a mob that overran the United States Capitol, preventing Congress from certifying the result of the presidential election until the early-morning hours the following day. As the building was being overrun, Sibick posed for a picture with a trophy on the steps of the Capitol, a USCP riot shield. Shortly thereafter, Sibick participated in one of the worst assaults on the Capitol's police defenders that day. While an officer who had been dragged into the mob was beaten, tased, and threatened with death, Sibick stripped the officer of his badge and radio. Sibick took these trophies home to Buffalo, New York, where he buried the badge in his backyard. He then repeatedly lied to the FBI about his actions, changing his story multiple times when confronted with his deceptions. Although Sibick eventually returned the officer's badge to the FBI, it remains unclear which, if any, of his conflicting accounts regarding the radio's whereabouts is accurate.

   1. **Sibick's attempts to breach the Capitol.**

Sibick enthusiastically participated in the effort to breach the Capitol. He posted a video on Instagram showing him in the mob near the inauguration ceremony stage of the lower west terrace (Exhibit 1). The video pans the crowd with the caption, "Wildest experience of my life!!" Sibick filmed himself screaming, "Just got tear-gassed, but we're going, baby, we're going! We're pushing forward now!" He also posted a photo to Facebook showing him holding and pointing to a U.S. Capitol Police (USCP) riot shield.

5

Surveillance video shows Sibick trying to enter the Capitol through a tunnel on the lower west terrace. USCP and Metropolitan Police Department (MPD) officers, including Officer M.F., blocked a doorway inside the tunnel to prevent the mob from entering the building. At 3:08 p.m., Sibick entered the tunnel, moved towards the police line until he was no longer visible on camera, then turned around and left at 3:11 p.m. A video posted to YouTube shows Sibick exiting the tunnel, being thanked for "his service" by another rioter, and responding, "Let's go. Let me just get refreshed."

### 2. The Assault and Robbery of Officer M.F.

At approximately 3:18 p.m., a group of USCP and MPD officers were able to clear the tunnel of rioters following a nearly forty-minute struggle. As the civilians were ejected from the archway, a rioter took advantage of the chaos and pulled Officer M.F. into the mob, where rioters beat, tased, and robbed him in one of the day's most severe attacks on law enforcement.

As shown below in screenshots from Officer M.F.'s body-worn camera, Sibick participated in the assault on this officer. At 3:19 p.m., while the officer fought for his life against the mob, Sibick forcibly ripped off Officer M.F.'s badge and radio, both of which were securely fixed to the officer's tactical vest.





Another rioter tried to remove Officer M.F.'s service weapon from its fixed holster while yelling that he was going to take the officer's gun and kill him. At 3:20 p.m., however, other individuals in the crowd intervened and surrounded Officer M.F. to protect him from his attackers.

These "protectors" created a ring around officer M.F. to deflect hostile members of the crowd while escorting the officer back to the safety of police line at the top of the stairs. It is notable that Sibick, in contrast to these "protectors," was focused on grabbing at the officer, pulling in the opposite direction of the police line with enough force to tear Officer M.F.'s badge from his uniform and take his radio, which was securely attached to his tactical vest. At approximately 3:21 p.m., the officer collapsed unconscious. He was hospitalized for his injuries including a likely concussion, injuries from the taser, and for monitoring of his cardiac activity.

    **3. Sibick lies repeatedly to the FBI.**

On January 7, 2021, Sibick posted an Instagram video in which he stated that he was

> very worried for America. Our system is broken. Our parties are divided. The people need to heal. What happened yesterday was a disgrace; an innocent life was lost. But the people are mad and the people have spoken. The violence is no different than the protests that we saw all summer long. . . .

(Exhibit 1).

Alerted to Sibick's post, the FBI conducted an initial interview with Sibick on January 27, 2021. At the time, agents did not know that Sibick had participated in the attack on Officer M.F. Sibick told the agents that he saw members of the mob attack an officer and try to get his gun. Sibick claimed that he tried to reach the officer and pull him away but was unable to do so – fearing for his own life and the officer's – and that he decided to leave. On February 2, Sibick called an agent to tell him he planned to e-mail more information about the assault of the police officer that he witnessed. When asked about his previous account, Sibick said that he did not have anything different to add, that his previous account was accurate, and again falsely claimed that he had not participated in the assault on the officer in any way.

8

On February 23, 2021, the FBI reinterviewed Sibick after agents watched Officer M.F.'s body-worn camera video and saw clear evidence that Sibick had stolen the officer's badge and radio. Although he initially failed again to mention his possession of these items, after being shown screenshots, Sibick admitted that he grabbed the officer's badge and radio, but claimed that he had reached in to try to help the officer. Sibick also stated that he pressed the radio's emergency button to summon help. During the interview, when asked what he did with the badge and radio, Sibick changed his story three times. After first stating that he dropped the badge and radio immediately and left, he then told agents that he carried the items away but dropped them in the trash on Constitution Avenue. Next, explaining he needed to "recant" that statement, Sibick admitted he brought the badge and radio home to Buffalo, then claimed that he had intended to turn the items over to the FBI – but got cold feet and threw them in a dumpster. On February 24, Sibick told agents that the dumpster was behind the Lenox Hotel in Buffalo. Two days later, however, after an agent told Sibick that the FBI planned to check the hotel's cameras, Sibick admitted that he had buried the badge in his backyard. Sibick gave the agent a bag containing Officer M.F.'s badge covered in mud.



Despite Sibick having provided four separate stories to the FBI concerning what happened to Officer M.F.'s badge and radio, the radio has not been recovered. As for Sibick's claim that he had tried to summon help for the officer, MPD determined that the radio's emergency button was pressed at 3:37 p.m. – approximately 16 minutes after others had already escorted Officer M.F. back to the safety of the police line.

B. Weight of the Evidence

The second factor to be considered, the weight of the evidence, also weighs in favor of continued detention. The evidence against Sibick is strong and compelling. Multiple videos track Sibick's actions that day, including a body-worn camera video of Sibick robbing Officer M.F. of his badge and radio, and the video that the defense now brings to the attention of the Court. Sibick's claims that he was trying to help the officer are unsubstantiated by the evidence. Rather, the evidence shows that Sibick proudly and eagerly participated in a violent riot, including taking a photograph with a USCP riot shield, forcibly robbing an officer who was in the midst of carrying out his duty to protect the Capitol, and then concealing the evidence of his

10

crimes by repeatedly lying and burying the officer's badge in his backyard.

Sibick argues that the defense's review of a video that was disclosed after the detention hearing "undermines the narrative the government has been advancing since the beginning of this case." (Def.'s Mot. Reopen Detention Hr'g, ECF No. 66 at p.16). The video, however, is consistent with the government's recitation of the facts of this case, and consistent with the body-worn camera clip provided at the detention hearing. The government believes it has deduced which video the defense is referencing from its description and is providing a shortened clip from the video attached hereto as Exhibit 3.[1]

Exhibit 3 is consistent with Sibick intentionally assaulting and robbing Officer M.F. of his badge and police radio. The video, which depicts the attack on the officer from a vantage point above the crowd, shows Sibick purposely moving toward Officer M.F. while the mob was attacking him. For a moment before Sibick reaches toward the officer, Officer M.F.'s body is

---

[1] The original video, along with longer versions of the video that show a wider angle, were provided to the defense via USAfx on May 14, 2021 (Notice of Disc., ECF No. 54 at p. 2).

The defense indicates that the video "was apparently uploaded to the USAfx portal on August 12, 2021." (ECF No. 66 at p.16). USAfx provides time stamps indicating when an item was last uploaded. The video in question was first uploaded on May 14, 2021, as indicated in the government's discovery letter (ECF No 54 at p. 2). However, USAfx automatically removes items after 60 days. The government flagged this auto-deletion mechanism in an email when providing a discovery letter to the defense on May 14, 2021.

As a result of the auto-deletion process, the items uploaded in May were no longer in the USAfx folder by August 3, 2021, when co-defendant Kyle Young obtained a new attorney (ECF No. 62). In order to ensure that the new attorney had access to all materials that were previously disclosed, the government re-uploaded materials that USAfx had automatically removed from the file. Thus, the current time stamp in the USAfx folder indicates that the video was last uploaded on August 12, 2021. It will remain in that location and available for the defense to view and download until early October, when it will again be auto-deleted.

turned toward Sibick such that his upper torso would have visible to Sibick, including the officer's badge, as shown in the screenshot below.



The video shows Sibick reaching toward the officer such that they were in close proximity for at least a couple seconds, although the angle of the video does not show Sibick taking the badge and radio. That Sibick striped Officer M.F. of his badge and radio over the course of approximately two seconds in the middle of a chaotic attack is not new information. The time stamp on the annotated clip of the officer's body-worn camera, which the government provided to the Court and defense counsel in advance of the detention hearing, shows that Sibick took Officer M.F.'s badge

in his left hand at 15:19:24 and then took the radio in his right hand at 15:19:25. Those two seconds were slowed down and annotated in Exhibit 2. The body-worn camera clearly shows that Sibick had to reach past a chaotic fray of other people to take the items. The jostling of the crowd, and the possibility that gravity assisted in Sibick's ability to rip off the badge and radio so quickly does not undermine his conduct, which must be viewed in the context of his overall actions that day.

That day, Sibick posed with a riot shield, holding it like a trophy, and filmed himself in the crush of the crowd in the same area where he robbed Officer M.F. screaming, "We're pushing forward now!" After pushing into the tunnel in an effort to gain entry to the Capitol, Sibick told a bystander that he would "go" after he got "refreshed." Mere minutes later, he reached toward Officer M.F. while the officer was being attacked by other members of the crowd. Rather than making efforts to ward off the officer's attackers, like those who actually did help the officer and escort him to safety, Sibick joined in the attack by reaching past others and ripping off the officer's badge and radio. Then, rather than dropping or immediately returning the items to law enforcement, Sibick kept the evidence and took the items home with him to New York.[2] Fearful of being caught and held accountable for what he did, Sibick disposed of the radio and buried the badge in his backyard, unearthing it only when presented with the possibility that his lies about what happened to the badge could be disputed by surveillance video. In this context, Sibick's actions toward Officer M.F. were not those a good Samaritan, but part of a pattern of unlawful

---

[2] A longer version of the video defense references, which was disclosed at the same time as the 1-minute clip, shows that after Sibick was pushed back from the officer, he continued to move into the crowd and appears to be watching what happens from a distance, as Officer M.F. is eventually surrounded by other members of the crowd who escort him back to the police line. The badge and radio are not visible in Sibick's hands as he adjusts his hat and points and yells toward the area where the officer was being escorted to safety.

13

behavior. The weight of the evidence is strong, and thus, this factor remains the same under the Bail Reform Act analysis.

### C. History and Characteristics

The third factor, the history and characteristics of the person, similarly weighs in favor of continued detention. Sibick's criminal history contains six prior convictions, including an arrest for second degree aggravated harassment in New York in 2010, which was pled to disorderly conduct, and a conviction for failure to stop or respond for a police command in Utah in 2015, which also included a dismissed charge for carrying a concealed loaded firearm.

Although Sibick voluntarily met with the FBI on multiple occasions, he also repeatedly lied to law enforcement about what happened to the badge and radio he stole, and only told the truth about what happened to the badge when threatened with the possibility that his lie would be discovered. His post-assault behavior thus lacked meaningful remorse, and in fact, showcased his intent to continue to obstruct and conceal evidence if he believed he could get away with it. While the government recognizes that Sibick voluntarily surrendered himself for arrest, as Chief Judge Howell noted, "turning himself in does little to erase the defendant's egregious conduct on January 6th or the dissembling that he engaged in with law enforcement . . . ." Tr. Of March 16, 2021 hearing, at 47-48; *see also United States v. William Chrestman*, 21-mj-218-ZMF (BAH), at *29 (D.D.C. February 26, 2021) (the fact that the defendant "did not flee or evade arrest does little to mitigate the heavy weight of the other factors favoring detention"). Similarly, the fact that Sibick has received favorable reviews on his work performance evaluations while in jail does not outweigh his prior conduct. Indeed, as the D.C. Circuit held, Sibick's "multiple and repeated lies and misrepresentations to investigators about his conduct undermine his credibility and erode trust

14

that he will comply with conditions of release." *United States v. Thomas Sibick*, No.21-3015, at *2 (D.C. Cir. 2021).

      D.  <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. Sibick is charged with violent and assaultive conduct. As Chief Judge Howell noted, stealing Officer M.F's lifeline to call for safety "is just not acceptable; it's lawless behavior that is . . . a danger then, now and in the future." Tr. at 35. Chief Judge Howell also pointed to Sibick's statements in the video he posted on January 7, 2021, which, "shows a lack of remorse regarding his actions the previous day, stating that 'the people are mad' and that 'the people had spoken.' Defendant further stated that 'what happened yesterday is a disgrace,' which, in context, appears to refer to the lack of success of the riots the previous day." (Order of Detention Pending Trial, ECF No. 12 at 3).

The weight of the factors all individually favor detention. Given the above assessment of all four relevant factors, there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community. This is especially so when the defendant's continued obstruction occurred not just at the Capitol but in the confines of his home and back yard where he buried Officer M.F.'s badge.

## **CONCLUSION**

The government respectfully requests that this Court deny the defendant's motion.

                        Respectfully submitted,

                        CHANNING D. PHILLIPS

                    Acting United States Attorney
                    DC Bar No. 415793

By:    */s/ Cara A. Gardner*
        Cara A. Gardner
        Assistant United States Attorney
        D.C. Bar 1003793
        U.S. Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        202-252-7009
        Cara.Gardner@usdoj.gov

        */s/Tara Ravindra*
        Tara Ravindra
        Assistant United States Attorney
        D.C. Bar No. 1030622
        555 4th Street, N.W.
        Washington, D.C.
        (202) 252-7672
        Tara.Ravindra@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 17, 2021, I served a copy of this pleading on defendant's counsel through the Court's electronic filing system.

                    */s/ Cara A. Gardner*
                    Cara A. Gardner
                    Assistant United States Attorney

# EXHIBIT 1

(Government will provide to Court and Counsel via email)

# **<u>EXHIBIT 2</u>**

(Government will provide to Court and Counsel via email)

# **EXHIBIT 3**

(Government will provide to Court and Counsel via email)