UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 21-CR-291-1 (ABJ) |
| THOMAS F. SIBICK | : |

### DEFENDANT THOMAS SIBICK'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR MODIFICATION OF CONDITIONS OF RELEASE

Defendant Thomas F. Sibick, through undersigned counsel, Stephen F. Brennwald, submits the following Reply to Government's Response to Defendant's Motion for Modification of Conditions of Release, asking that the Court modify his release conditions from home confinement to an 8:00 a.m to 8 p.m. curfew, and in support thereof, states as follows:

*Government's Argument*

In its response, the government essentially makes two arguments in support of its claim that Mr. Sibick's conditions of release should not be modified:

1) Mr. Sibick, on January 6, 2021, "demonstrated a willingness to use violence to impede and obstruct the right and lawful function of government" and then "lied to the FBI about his actions…." Government's Response, ECF No. 129 at 7. The import of this argument is that because of his actions on January 6, 2021, Mr. Sibick cannot be trusted to follow the conditions of release this Court may impose, and thus presents an unreasonable danger to the community.

2) Defendant's present motion "contained a false statement regarding whether PSA provided permission for the Defendant to go shopping for work clothes." *Id*. The import of this (incorrect) assumption is that, once again, Mr. Sibick cannot be trusted

1

to follow the conditions of release this Court may impose, such that his present level of detention should be maintained.

The government further states that because Mr. Sibick's compliance with his conditions of release is to be expected, his perfect compliance with those conditions over the course of more than seven months does not decrease the danger that he currently poses to the community. *Id*. at 6.

*Defendant's Argument in Reply*

*Prior Compliance with Release Conditions*

This Court well knows that pursuant to 18 U.S.C. § 3142(c)(1)(B), it must impose the least restrictive conditions of release that are necessary to reasonably assure the appearance of the person as required, as well as the safety of any other person and the community.

And while prior compliance with conditions of release does not ensure, to a complete certainty, a person's future compliance, it is, defendant submits, a very significant indicator of future compliance.

To begin, defendant notes that he has filed this motion mainly because of the otherwise constant need to ask his pretrial officer for permission to do mundane and routine tasks – tasks whose undertaking does not present any danger to this community, such as stopping for gas on his way to or from work, picking up some groceries on his way to or from work, stopping at a drug store to pick up some toiletries on his way to or from work, etc…

It is easy for those of us who travel freely throughout our days to forget the great number of activities in which we necessarily engage over the course of a day or a week or a month, including those just mentioned, but also a host of other actions.

Moreover, as noted previously, when Mr. Sibick traveled in the past to his mental health sessions by metro and by bus (before he began working, and switched his sessions from in person to telehealth sessions), he used the public transit system to get to and from his appointments.  During those time periods (about an hour each way), he literally could have gotten off a bus or a train and gone wherever he wished, and thus have presented a potential danger to the community.  But he did not do so, and has thus demonstrated, over and over again, that he will comply with all terms of his release conditions.

The last thing Mr. Sibick wants to do is to risk a return to the terrible conditions he experienced in the District of Columbia Department of Corrections.  That is all the motivation he needs to comply, and keep complying, with his conditions of release.

And that is why, when he hoped to go shopping for some work clothes before starting his job in April, he texted his pretrial agent to ask for permission to do so.  In fact, Mr. Sibick constantly checks with his pretrial agent whenever he has a concern about whether he is allowed to go somewhere or do something.

So while the government is partially right when it says that his compliance is expected, that narrative undervalues the significance of Mr. Sibick's compliance, as his regular and constant compliance does matter when one evaluates whether a modification of his conditions of release would create an unreasonable risk to the community.  And his compliance shows that such a modification would not in any way endanger the community.

*Mr. Sibick Did Not Make a False Statement Regarding his Request to Shop*

The government argues that Mr. Sibick's allegedly false statement that his pretrial officer did not give him permission to go shopping for work clothes before Mr. Sibick began his new employment is "concerning." *Id*. at 7.

But the fact is that Mr. Sibick did not make a false statement in this regard. This is because Mr. Sibick never received the very short text "[y]eah go tomorrow" that his pretrial agent apparently sent him on April 24, 2022, at 6:39 p.m.[1]

This is evident when one compares screenshots of the text message thread that appears on the agent's phone with the message thread on Mr. Sibick's phone.[2]

In the thread on Mr. Sibick's phone, when Mr. Sibick asks for permission to go clothes shopping, the next text that appears is one that the agent sent the following morning (Monday, April 25, 2022, at 6:38 a.m.) claiming that Mr. Sibick had missed a "check-in" the night before (which he had not).[3]

That Mr. Sibick never received the text is supported by the fact that the next day, he called his agent to ask about this topic, something he wouldn't have had to do had he known he had been given permission (the day before) to go clothes shopping.

Mr. Sibick also would not have asked counsel to include the topic of shopping for work clothes had he received the text authorizing him (apparently on a one-time basis) to go clothes shopping.

---

[1] When the DC PSA officer informed the Court at the last hearing that the Buffalo agent had given Mr. Sibick permission to go shopping, Mr. Sibick informed counsel that that had to be a lie, as he never received a text indicating that he was free to go shopping for work clothes. Mr. Sibick was shocked when the text proffered by the government showed that a text was supposedly sent to him on Sunday, April 24, 2022, at 6:39 p.m., as he never received such a text. Mr. Sibick does not doubt the Buffalo agent's representations. He (Mr. Sibick) just never received that text, as his text message chain demonstrates.

[2] In the attached exhibits, the screenshots from Mr. Sibick's phone show Mr. Sibick's writing in white on a blue background, while the agent's writing appears to be white against a black background. In the screenshots from the agent's phone, the colors are reversed (as one would expect, since the writer whose phone is used shows that writer's text – whether Mr. Sibick's or the agent's – in white over blue).

[3] The check-in system that links Mr. Sibick's phone with an automated system works in this way (generally): The system sends Mr. Sibick a notification to check in through his phone. Mr. Sibick then has a few minutes to take a picture of himself and send that picture to the system. The system then is able to determine Mr. Sibick's exact location by using geographical coordinates. If Mr. Sibick does not hear the notification, the system sends a second notification, and then a third. Sometimes when Mr. Sibick tries to send a picture of himself to the system, the picture does not go through, so he has to try again, and technical problems are not unheard of. But in any event, Mr. Sibick regularly sends proof (through a picture) of his whereabouts whenever the system randomly contacts him, apparently at least three times a day.

4

*Final Considerations*

As the government admits in its Response, citing the May 25, 2022, Pretrial Services Report (ECF No. 128), DC PSA "does not recommend or initiate requests for lower levels of supervision for those individuals charged in United States District Court[,] and moving to a curfew is considered a lower level of supervision." *Id.* at 5.

What this means is that no matter how well a person is faring on pretrial release, it is the policy of the DC PSA never to recommend a lower level of supervision throughout the course of a case.

This blanket policy is obviously at odds with the law, as found in 18 U.S.C. § 3142(c)(1)(B), as it does not base its release recommendations on the least restrictive condition(s) necessary to ensure the safety of the community, but rather dictates PSA to continue to recommend the same level or conditions of detention no matter the circumstances of a particular defendant.

As applied to this case, that policy basically renders PSA's position on defendant's motion meaningless, as it does not address the central question that this Court must consider: Will placing Mr. Sibick on a curfew unreasonably endanger the safety of the community when Mr. Sibick has been compliant with his release conditions over the course of over seven months?

Mr. Sibick has been working for over four weeks at this point, and he leaves his home (on his own) at around 9:30 and returns home from work (on his own) at about 6:30.

He is asking this Court to allow him to leave his home at 8:00 a.m., and return at 8 p.m., in order to allow him to engage in a number of perfectly legal tasks and activities whose performance will in no way endanger the safety of the community.

He has also asked for a similar curfew on weekends so that he can exercise (run, walk, etc…) and also help his friend with the remodeling of the two properties that have been discussed in another filing.

Mr. Sibick's pretrial agent in New York has indicated that he (the agent) cannot allow Mr. Sibick to participate in this remodeling activity without approval from this Court. And counsel can think of no reason – especially when this Court previously gave its approval for this very activity – that Mr. Sibick would now present a danger were he allowed, when he is not in church on Sunday, to help with the renovations of two properties.

*Conclusion*

Defendant understands that he is charged with having engaged in illegal conduct about a year and a half ago. He also maintains, however, that he has been compliant with his stringent conditions of release up until this time, and that allowing him to progress toward less restrictive conditions of release is warranted in light of his prior (and present) compliance.[4]

WHEREFORE, in light of the foregoing, defendant asks this Court to grant the foregoing relief, and for any other relief this Court may deem just and proper.[5]

---

[4] Counsel would also note that the former president has been holding a number of rallies over the course of the past few months, and Mr. Sibick has (obviously) not attended any of the rallies, and has no intention of attending any such rally. Concern that political fervor may overtake Mr. Sibick's rational thinking process was one factor that led the government to oppose Mr. Sibick's release in the first place, but Mr. Sibick has shown that he is not going to violate any conditions of release by attending or attempting to attend any such rally or event, or by failing to abide by any of the conditions this Court has imposed in connection with his release.

[5] Because any proposed Order could encompass a number of possible scenarios, it is impractical to submit such an order with this motion. Defendant is confident that any Order will reflect the Court's decision, including any specific conditions or limitations the Court deems appropriate.

        Respectfully submitted,

        /s/

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C.  20003
(301) 928-7727
(202) 544-7626(facsimile)
E-mail:  sfbrennwald@cs.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by ECF, this 2nd day of June, 2022 to the U.S. Attorney's Office and to all counsel of record.

        /s/

Stephen F. Brennwald